UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Paul Smith,

    Plaintiff,

v.                                    Case No. 17-10629

Michigan Department of Health
and Human Services, et. al.,        Sean F. Cox
                                            United States District Court Judge

    Defendants.
_____/

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff has brought a multitude of § 1983 claims against the Michigan Department of Health and Human Services and various State Defendants relating to child abuse and neglect proceedings that were initiated against him. Defendants have filed a Motion to Dismiss. For the reasons below, the Court concludes on each count that Plaintiff has either failed to state a claim or that his claims are barred by absolute or qualified immunity. Therefore, the Court shall grant Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff Paul Smith is a resident of Macomb County. Amended Complaint, ¶ 1. In August 2014, Plaintiff brought his ten-month old daughter to a Farmington Hills Urgent Care facility for evaluation of injuries that she had suffered the day before. *Id*. at ¶ 20-21. She had significant bruising on her face and showed signs of left ankle discomfort. *Id*. at ¶ 21. Based on these injuries, personnel at the facility filed a suspected child abuse and neglect report with the Macomb County office of the Michigan Department of Health and Human Services. *Id*. at ¶ 22.

1

The Department initiated an investigation. Defendant Katherine Oren, a child protective services social worker, arrived at the urgent care facility and interviewed Plaintiff. *Id*. at ¶ 27. Oren then sought Plaintiff's compliance with a voluntary safety plan. *Id*. at ¶ 28-29. To induce compliance, she threatened: to revoke the visa status of Plaintiff's wife, that criminal child abuse proceedings could be initiated against Plaintiff, and that deviations from the plan would result in the removal of Plaintiff's children from the home. *Id*. at ¶ 222. Plaintiff agreed to the plan, which provided that he would leave his home during the investigation and that he would not have unsupervised contact with his children. *Id*. at ¶ 28-29, 224.

The next day, Defendant Jennifer Rein, another child protective services social worker, became the lead investigator on the case, under the supervision of Defendant Lashonda Reed. *Id*. at ¶ 9, 38. During the investigation, Plaintiff was placed on the Central Child Abuse and Neglect Registry as a perpetrator. *Id*. at ¶ 166. Based on Rein's investigation, the Department filed petitions seeking to terminate Plaintiff's parental rights to his children and requesting an order removing Plaintiff from his home. Doc. # 21, Ex. A.[1] The petitions alleged that Plaintiff had failed to comply with the voluntary safety plan and that his daughter was severely injured while in his care. *Id*.

In November 2014, following a preliminary hearing, the Macomb County Circuit Court entered an order authorizing the petitions and finding that there was probable cause to believe one or more of the allegations in the petitions were true. Doc # 21, Ex. B. The Court ordered

---

[1] When reviewing a motion to dismiss, the Court may consider public records and items appearing in the record of the case if they are referred to in the complaint and are central to the claims therein. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Here, the Court considers the petitions and court orders attached as exhibits to Defendants' initial Motion to Dismiss, as these documents are central to Plaintiff's claims.

that Plaintiff could not be present in any home, at any time, where his children were residing. *Id*. The Court also ordered Plaintiff to leave his home and have no contact with his children except for supervised visits. Doc # 21, Ex. C.

In March 2015, a jury trial was held to determine whether the court would acquire jurisdiction over the minor children. Amended Complaint, ¶ 70. The jury returned a verdict dismissing all of the petitions against Plaintiff and the Department closed its case. *Id*. at ¶ 71-72. The next month, Plaintiff was advised that he was being removed from the Child Abuse and Neglect Central Registry. *Id*. at ¶ 73.

Plaintiff, on behalf of himself and his three minor children, has sued the Michigan Department of Health and Human Services, Department Director Nick Lyon, Macomb County Director Valerie Nunn, Macomb County Director of Children's Services Michael Patterson, and child protective services workers Lashonda Reed, Jennifer Rein, and Katherine Oren. In his amended complaint, Plaintiff raises the following § 1983 claims:

*Counts 1-3*: Plaintiff alleges that Rein's CPS investigation, with Reed's approval, denied him his due process right to be free from interference with familial associations and relationships and violated the Equal Protection Clause because Defendants' made arbitrary and capricious determinations. Specifically, Plaintiff argues that his rights were violated by Defendants' filing of the petitions and by their failure to properly investigate the allegations against him with respect to his children K.G (Count One), E.S. (Count Two), and J.S. (Count Three).

*Count 4*: Plaintiff alleges that Lyon, Nunn, and Patterson failed to properly supervise the CPS investigation, violating the Due Process and Equal Protection Clauses.

*Count 5*: Plaintiff alleges that Rein and Reed illegally released investigative reports to the

mothers of his children, in violation of the Equal Protection Clause.

*Count 6*: Plaintiff alleges that Reed, Rein, and Oren's implementation of the voluntary safety plan violated his right to use of his property, in violation of the Due Process and Equal Protection Clauses.

*Count7*: Plaintiff seeks declaratory relief finding that the implementation of the voluntary safety plan was unconstitutional. He also requests that the Court order the Department to ensure that safety plans are not arbitrarily implemented without recourse for review, nullification, or modification by an independent administrative or judicial authority.

Defendants have moved to dismiss the complaint (Doc. # 37) and Plaintiff has responded (Doc. # 38). The Court held a hearing in this matter on January 18, 2018.

## STANDARD OF DECISION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal under Rule 12(b)(6) is "appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

## ANALYSIS

Plaintiff has brought numerous 42 U.S.C. § 1983 claims against Defendants. To state a claim, Plaintiff must demonstrate that (1) he was deprived of a right, privilege, or immunity

4

secured by the Constitution and (2) the deprivation was caused by a person acting under color of state law.[2] *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008). Plaintiff must also overcome any defenses of absolute or qualified immunity. *See Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009).

### I. Plaintiff's Equal Protection Claims

In each of the first six counts of the complaint, Plaintiff alleges violations of the Equal Protection Clause, arguing that his fundamental rights were burdened by arbitrary and capricious determinations made regarding the application of statutes and policies.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation marks omitted). To prevail on a "class of one" equal protection claim challenging the "arbitrary and capricious" enforcement of statutes or policies, "plaintiffs must plead and prove that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Rapp v. Dutcher*, 557 Fed. App'x. 444, 449 (6th Cir. 2014), quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Thus, the "threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cnty. Bd. Of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Plaintiff's complaint fails to meet this threshold. Plaintiff does not allege that he is a member of a suspect class and he has not identified any similarly situated parents who were

---

[2] The parties do not dispute that Defendants were acting under the color of state law.

treated differently. *Cf. Olech*, 528 U.S. at 565 (holding the plaintiff stated an equal protection claim where the complaint alleged that the defendant treated her differently from other similarly situated property owners). The complaint contains no plausible allegations of disparate treatment. And Plaintiff's conclusory assertion that Defendants made "arbitrary and capricious determinations," without more, is insufficient to state an equal protection claim. *Napolitano*, 648 F.3d at 380 ("[I]n the absence of any plausible allegation of disparate treatment, the Amended Complaint fails to state an equal protection claim . . . ."). Because Count Five (alleging the improper disclosure of investigative reports) only raises a violation of the Equal Protection Clause, the Court shall dismiss it for failure to state a claim. Further analysis is required for Plaintiff's other counts, however, because they also allege violations of the Due Process Clause.

## II. Plaintiff's Right to Family Integrity Claims

The first three counts of the complaint allege that Defendants Rein and Reed violated Plaintiff's substantive and due process rights under the Fourteenth Amendment by depriving him of a fundamental liberty interest–the right to family integrity. *See Young v. Vega*, 574 Fed. App'x. 684, 689-90 (6th Cir. 2014) ("Parents have a fundamental liberty interest in family integrity . . . that is protected by the substantive and procedural due process guarantees of the Fourteenth Amendment."). Specifically, Plaintiff contends that his rights were violated by their decision to file the petitions and by deficiencies in Rein's investigation, which deviated from statutory and administrative standards. In response, Defendants assert immunity.

### A. Absolute Immunity

Rein and Reed first argue that they are entitled to absolute immunity. Social workers are

6

entitled to absolute immunity under certain circumstances. *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). This immunity is "akin to the scope of absolute prosecutorial immunity." *Pittman v. Cuyahoga County Dep't. Of Children and Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011). The critical inquiry is whether the social worker's actions were those of an advocate. *Holloway*, 220 F.3d at 775. In other words, "social workers are absolutely immune when they are acting in their capacity as *legal advocates*–initiating court actions or testifying under oath–not when they are performing administrative, investigative, or other functions." *Id*.

Rein and Reed are entitled to absolute immunity for filing the termination petitions. Filing an abuse and neglect petition is a "quasi-prosecutorial function" that initiates child protective proceedings. *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). Similarly, although Plaintiff also apparently take umbrage with statements made by Rein during his Friend of the Court hearing and preliminary hearing, Rein is also entitled to absolute immunity for these statements, which were made in her capacity as a legal advocate. *See Pittman*, 640 F.3d at 725. This is true even if her statements contained intentional misrepresentations. *Id*.

The crux of Plaintiff's first three counts, however, are his allegations that Rein and Reed engaged in a deficient and biased investigation. Although the allegations in the complaint are muddied, Plaintiff's complaint can be construed to allege that Rein and Reed's filing of the petitions was prompted by their failure to properly investigate. Even so, this claim is still barred by Rein and Reed's absolute immunity. Although the Sixth Circuit has previously denied absolute immunity for a social worker's decision to begin an investigation, *see Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989), it has since clarified that absolute immunity extends to the investigation underlying the decision to file a petition or make recommendations

7

to the Court. *Pittman*, 640 F.3d at 726; *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001) (extending absolute immunity to two social workers who "failed to conduct a careful investigation before incorporating . . . false accusations in the petition."). Here, Rein and Reed's absolute immunity for filing the petitions also protects them from Plaintiff's claim that their failure to properly investigate led to their filing of the petitions. *See Pittman*, 640 F.3d at 726 ("Hurry's absolute immunity also protects her from Pittman's claim that her allegedly false assertions in the complaint and affidavits stem from an inadequate investigation.").

### B. Qualified Immunity

Additionally, to the extent Rein and Reed are not entitled to absolute immunity for any failure to adequately investigate, they are entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). Here, the Court's qualified immunity inquiry begins, and ends, with whether Rein and Reed violated a constitutionally protected right.

Like in *Pittman*, Plaintiff here premises his substantive and procedural due process claims on the alleged deprivation of his fundamental liberty interest in family integrity. But Plaintiff has failed to state a claim that Rein and Reed's conduct caused that deprivation (substantive due process) or that it interfered with the process due upon that deprivation

8

(procedural due process).

For substantive due process, to the extent Plaintiff suffered a deprivation of his right to family integrity, it was the juvenile court, not Rein and Reed, that deprived him of this right. *Pittman*, 640 F.3d at 729. Although the complaint is far from clear on precisely how the investigation deprived Plaintiff of his right to family integrity, the most plausible inference is that Plaintiff alleges that the investigation led to his removal from his home and the prohibition on unsupervised contact with his children. But under Michigan law, these decisions were the province of the juvenile court, not the Department's social workers.[3] After authorizing a petition, which the Macomb County Circuit Court did here, a court may order the parent to leave the home, M.C.L. § 712A.13a(4), and may place limitations on the parent's contact with his or her children. M.C.L. § 712A.13a(8)(c). Although Rein and Reed, as social workers, may have recommended these decisions, their recommendations are non-binding. It is the court that has the "ultimate decisionmaking power;" and it alone could deprive Plaintiff of his fundamental right. *Pittman*, 640 F.3d at 729. Therefore, Rein and Reed's conduct did not violate Plaintiff's substantive due process rights, and they have qualified immunity against those claims.

Rein and Reed also did not violate Plaintiff's procedural due process rights. To state a claim, Plaintiff must show that he was (1) deprived of a protected liberty or property interest, and (2) that this deprivation occurred without the requisite due process of law. *Id*. Because Rein and Reed did not deprive Plaintiff of a protected liberty interest, it is unnecessary to consider whether any deprivation contravened due process. *See Thomas v. Cohen*, 304 F.3d 563, 576 (6th

---

[3] As explained in Section III, to the extent Plaintiff complains that the investigation and implementation of voluntary safety plan violated his right to family integrity, he has not shown that the plan's implementation violated his clearly established rights.

9

Cir. 2002). Thus, Rein and Reed have qualified immunity against Plaintiff's procedural due process claims.

In sum, Rein and Reed have either absolute immunity or qualified immunity for Plaintiff's substantive and procedural due process claims raised in the first three counts of the complaint. Because Rein and Reed are immune from these claims, the Court shall grant their Motion to Dismiss as to these counts.

### III. Whether the Voluntary Safety Plan Violated the Due Process Clause

In Count Six, Plaintiff alleges that the implementation of the voluntary safety plan by Defendants Reed, Rein, and Oren, which required Plaintiff to leave his home, violated his due process rights to the use and enjoyment of his property. And, although murky, Plaintiff's complaint also appears to allege that the voluntary safety plan violated his right to family integrity. Plaintiff contends that his agreement to the plan was not voluntary but was instead induced by coercion and duress. In response, Defendants claim governmental immunity.

To begin, Defendants are not entitled to absolute immunity with respect to the implementation of the voluntary safety plan. Defendants initiated the safety plan to remove Plaintiff from his home while they investigated the suspected child abuse. In doing so, they were not acting in their capacity as legal advocates. The decision to initiate a safety plan is not akin to initiating a court action or testifying under oath, nor was it done in preparation for those actions. Because this decision–made at the onset of the investigation–was made in Defendants' investigative capacity, they are not entitled to the protections of absolute immunity. *Holloway*, 220 F.3d at 775.

The Court must next consider whether Defendants are entitled to qualified immunity.

10

Again, Plaintiff must show that the allegedly coercive implementation of the safety plan violated a constitutional right and that the right at issue was clearly established. *Barber*, 809 F.3d at 844.

Plaintiff contends that he was coerced into agreeing to the safety plan and that this involuntary implementation violated his constitutional rights. His complaint alleges that Oren made three different threats to induce his compliance: to revoke his wife's visa status, to initiate criminal child abuse proceedings, and to remove his children from the home. But the Sixth Circuit has squarely held that this last threat–to remove Plaintiff's children–does not violate the Fourteenth Amendment. *Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008); *see also Schattilly v. Daugharty*, 656 Fed. App'x. 123, 129 (6th Cir. 2016) ("[W]e have explicitly held that [threatening removal proceedings to obtain consent] does not violate the Fourteenth Amendment."). Thus, Oren's threats of removal did not violate Plaintiff's due process rights.

Plaintiff may have a more plausible argument that his rights were violated by Oren's threats of criminal prosecution and revocation of his wife's visa status. There is at least some support for the proposition that these threats, unlike threats of removal, may raise due process concerns. *See, e.g., Smith*, 520 F.3d at 602 (Gilman, J., dissenting) (concluding that a social worker's threats of imprisonment could lead a reasonable jury to conclude that participation in a safety plan was the result of duress); *Croft v. Westmoreland Cnty. Children and Youth Servs.*, 103 F.3d 1123, 1125 n. 1 (3rd Cir. 1997) (concluding that a threat to place the plaintiff's child in foster care was coercive). That said, it is unnecessary to resolve that question here. Even if Oren's threats did violate a constitutional right, Plaintiff has not show that the right was clearly established.

"A clearly established right is one that is sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation marks omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id*. (quotation marks omitted). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court looks first to decisions of the Supreme Court, then to the Sixth Circuit, and then to decisions of other courts of appeal. *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013).

Plaintiff has not identified any cases, and the Court has found none, standing for the proposition that in August 2014 it was clearly established that the threatening the initiation of criminal child abuse proceedings or to revoke a visa violates the Fourteenth Amendment. Notably, although Judge Gilman's dissent in *Smith* concluded that such conduct is unconstitutional, the majority was evidently unpersuaded by that assertion. Instead, *Smith* may be read to suggest that it is not coercive for a social worker to threaten actions that may otherwise be lawfully undertaken to secure consent to a safety plan. In any event, this is not a circumstance where the violative nature of Defendants' "particular conduct" is clearly established. *Mullenix*, 136 S. Ct. at 308. Accordingly, because Plaintiff has not shown that the asserted due process rights were clearly established, Defendants' are entitled to qualified immunity on this claim and the Court shall dismiss Count Six.

## IV. Plaintiff's Failure to Supervise Claim

In Count Four, Plaintiff brings a failure to supervise claim against Defendants Lyon, Nunn, and Patterson for violating his substantive and procedural due process rights. Plaintiff alleges that these Defendants were responsible for ensuring that abuse and neglect investigations

comported with statutory requirements and that their failure to respond to his request to be removed from the child abuse registry ratified the deficiencies in his own CPS investigation.

Plaintiff has failed to state a claim. There can be no supervisory liability here because Defendants' subordinates–Rein and Reed–did not violate Plaintiff's constitutional rights and have immunity from Plaintiff's constitutional claims. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor.").

Further, even if Plaintiff had established that Rein and Reed violated his rights, he has not alleged that Lyon, Nunn, and Patterson encouraged a specific incident of misconduct or otherwise directly participated in it. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.") Plaintiff alleges that he submitted a request for removal from the Child Abuse and Neglect Registry to the supervisory Defendants, but admits that it is unknown to what extent they evaluated his request. These conclusory allegations of liability fail to show the direct participation or encouragement by Defendants that is necessary to establish supervisory liability. Therefore, Plaintiff has failed to state a claim and the Court shall dismiss Count Four.

### V. Plaintiff's Claim for Declaratory and Injunctive Relief

Finally, in Count Seven Plaintiff seeks a declaratory judgment finding that the implementation and continuation of the voluntary safety plan was unconstitutional as applied to him. He also requests injunctive relief, asking the Court to order the Department to ensure that safety plans are not arbitrarily implemented and are subject to some form of review. Defendants

13

argue that Plaintiff lacks standing to bring this claim.

To have standing under Article III of the Constitution, Plaintiff must show (1) injury in fact, (2) causation, and (3) redressability. *ACLU v. Nat'l. Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007). Unlike Plaintiff's other claims which address past harms, this claim seeks prospective relief. To show injury in fact in this context, the threatened injury must be "certainly impending" or there must be a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quotation marks omitted). "Past exposure to illegal conduct" is insufficient unless there are "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Even if the implementation of a voluntary safety plan is a cognizable injury (a doubtful proposition), Plaintiff's complaint contains no allegation that he may be subject to a voluntary safety plan in the future. The complaint refers to the harm Plaintiff suffered from his voluntary safety plan and contends that other similarly situated parents have suffered the same fate. But this merely alleges a past injury; Plaintiff has not alleged any continuing adverse effects from the safety plan that would confer standing to seek prospective relief. And Plaintiff's cursory reference to similarly situated parents does not confer standing; he does not allege that there is a substantial risk that he himself will be harmed by forced participation in a voluntary safety plan in the future. Absent this showing, Plaintiff lacks standing because he "suffers no immediate threat of harm from the challenged [practice] greater than that of any other parent in Michigan." *Barber*, 809 F.3d at 849. Therefore, the Court shall dismiss Count Seven.

## CONCLUSION

For the reasons above, the Court ORDERS that Defendants' Motion to Dismiss is

GRANTED.

    IT IS SO ORDERED.

                                                <u>s/Sean F. Cox</u>
                                                Sean F. Cox
                                                United States District Judge

Dated: January 23, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 23, 2018, by electronic and/or ordinary mail.

                                                <u>s/Jennifer McCoy</u>
                                                Case Manager